KOPHAL *v.* WEISENBERGER.

REPLEVIN—DEMAND—LAWFULNESS OF POSSESSION—TITLE.

Plaintiff was entitled to maintain replevin, without a demand, for an automobile which he had his daughter buy for the benefit or use of plaintiff's grandson, but without any intention to part with the title, and where she had a bill of sale executed in the name of her husband, without plaintiff's consent, and the husband put it in defendant's garage for storage.

Error to Wayne; Mandell, J. Submitted April 12, 1916. (Docket No. 122.) Decided June 1, 1916.

Replevin by Charles Kophal against Joseph E. Weisenberger and August Fengler for the possession of

an automobile. Judgment for defendants on a verdict directed by the court. Plaintiff brings error. Reversed.

*John H. Dohrman,* for appellant.

*Wilkinson, Routier & Hinkley,* for appellee Fengler.

MOORE, J. This is an action of replevin brought to recover an automobile or its value, which plaintiff claims belonged to him. After the plaintiff rested his case the trial judge directed a verdict in favor of August Fengler, the other defendant not appearing in the case. The case is brought here by writ of error.

The plaintiff bases his appeal upon two grounds:

(1) That no demand was necessary.

(2) That the demand made upon defendant Joseph E. Weisenberger was a sufficient demand.

We think it necessary to consider only the first ground. It is said the plaintiff was upwards of 80 years old at the time of the trial. It was his claim that prior to June 27, 1914, he sold one of two properties he owned on Jay street, Detroit, and followed his wife to the home of their daughter, Mrs. August Fengler. That he gave Mrs. Fengler $50 and paid for the board of himself and wife. That he and his wife concluded to buy an automobile. "I said I would buy it, but they were to pay the oil, license and gas." His grandson George and his mother saw the agent who demonstrated the machine.

"I showed him the money and said when you bring the automobile you get the money, so he got the automobile and I had the money, but gave it to my wife to look it over, and my wife handed it over to the oldest daughter. They handed it to the agent then. I told him my name was Charlie Kophal. I got no receipt. * * * My wife and I * * * went back to our cottage on Jay street and she died there. When

191 Mich.—29.

I moved I went there to get the automobile out of the barn. * * * I got a man to drive it, but it was gone."

At the time the money was paid Mrs. Fengler signed a written order for the machine in the name of her husband, August Fengler, and the bill of sale was made out to him. It is the claim of the plaintiff that he did not authorize this to be done and knew nothing of it. On his cross-examination he said:

"The property on Jay street that we sold in the name of myself and wife. After we sold that property my wife wanted an automobile so we could drive around and get some fresh air.

"Q. You wanted your daughter to have it, so your son could have it to drive around?

"A. Yes; the boy.

"Q. Your grandson?

"A. Yes, sir.

"Q. Your boy is your grandson?

"A. Yes, sir.

"Q. For that purpose you gave the money to Mrs. Fengler to buy the machine?

"A. Yes, sir. They took us out two times; they did not take out my wife alone at all; the third time they would not take us any more."

It is claimed this indicates that he bought the machine for his daughter. The old man caused inquiries to be made and traced the machine to the garage of defendant Weisenberger, where it had been left by the son of August Fengler, payment being made for its storage. The plaintiff authorized his son to look up and get the machine. The son had an interview with Mr. Weisenberger. It is not very clear just what was said. Mr. Weisenberger's version is:

"Q. You are one of the defendants served with process in this cause, are you not?

"A. Yes, sir.

"Q. I call your attention to—stand up Mr. Robert Kophal—I call your attention to the gentleman in the second seat, do you recognize him?

"*A.* Yes.   *   *   *   Witness (continuing): The car was left in my garage by the young man, Mr. Fengler, who is not the defendant in this cause, August Fengler, but his son George and a grandson of plaintiff. He did not say to whom the car belonged; he just brought it and paid the storage on it.

"*Q.* Was there a demand made upon you for this car by any one else?

"*A.* There was a couple of days before by a gentleman, by Robert Kophal.

"*Q.* State whether that was before you were served with a writ of replevin by the sheriff?

"*A.* Just before.

"*Q.* How long before?

"*A.* Perhaps two days; I could not say for sure.

"*Q.* In response or in answer to that demand by Robert Kophal, for the car, what did you say to him?

"*A.* I could not say much because the car was not— because it belonged to Fengler and it could not go out to any one else but him.

"*Q.* Did you as a matter of fact refuse to give him the car?

"*A.* Refused it and always had to.

"*Q.* You say you refused?

"*A.* Yes, sir."

Cross-examination by Mr. Wilkinson:

"*Q.* What did Robert Kophal say when he asked you for the car?

"*A.* He said that the car belonged to him and made some statement, I can't just remember the whole lot of talk.

"*Q.* Robert Kophal said the car belonged to him?

"*A.* He said it in a way; yes.

"*Q.* Then so far as you remember the conversation was that Robert Kophal came in there and said this car belonged to me?

"*A.* Yes; he said it belonged to him and a dirty deal had been done, that is all; I did not pay any particular attention.

"*Q.* That is the demand made, that the car belonged to him?

"*A.* Yes; and he was going to get it.

"*Q.* Those are the words he used, the car belongs to me and I am going to get it?

"*A.* Yes, sir."

By Mr. Dohrman:

"*Q.* Do you remember enough of the circumstances to recollect now whether he said the car belongs to me or belonged to his father?

"*A.* I don't remember that part. I don't remember whether he said it belonged to him or to his father."

There was much more testimony than we have quoted, including the testimony of the agent who sold the machine to the plaintiff and received his money, but who took the order and gave the receipt as before stated, but why it was so done he does not know. After Robert Kophal saw the garage man this suit was instituted. Defendant Fengler gave to the sheriff the statutory bond and the automobile was delivered to him. He caused his appearance to be entered and has interposed the only defense made.

Counsel for defendant say that the possession of August Fengler was lawful, and that a demand should be made upon him before replevin would lie, citing *Darling* v. *Tegler*, 30 Mich. 54; *Becker* v. *Vandercook*, 54 Mich. 114 (19 N. W. 771); *Campbell* v. *Quackenbush*, 33 Mich. 287; *New Home Sewing Machine Co.* v. *Bothane*, 70 Mich. 443 (38 N. W. 326), and other cases.

A reference to those cases will show them unlike the instant case. It is the claim here that plaintiff bought and paid for the machine intending to take the title in himself. While it is claimed that his cross-examination gives rise to the inference that he intended to give the automobile to his daughter, when this cross-examination is taken in connection with the rest of the testimony the inference is not conclusive. There is not a suggestion in the record that plaintiff knew the title was put in August Fengler. Defendant Fengler was not present when the sale was made or when the

order and receipt were given. If the Fenglers were acting in good faith it is difficult to account for the disappearance at the time the plaintiff moved, of the automobile from where it was ordinarily kept, and its being placed in storage in a garage.

The case is within *Whitney* v. *McConnell,* 29 Mich. 12; *Carl* v. *McGonigal,* 58 Mich. 567 (25 N. W. 516); *Breitenwischer* v. *Clough,* 111 Mich. 6 (69 N. W. 88, 66 Am. St. Rep. 372); *Congdon* v. *Bailey,* 121 Mich. 570 (80 N. W. 369); *Schoolcraft* v. *Simpson,* 123 Mich. 215 (81 N. W. 1076).

Judgment is reversed, with costs to appellant, and a new trial ordered.

STONE, C. J., and KUHN, OSTRANDER, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.