JOSEPH C. FORD, EXECUTOR, ETC., v. MARCUS C. FORD, IMPLEADED WITH MARGARET G. FORD ET AL.

*Estates of deceased persons—Construction of foreign will—Equitable conversion—Perpetuities.*

1. Under the provisions of How. Stat. § 5808, providing for granting letters testamentary on the proof of foreign wills, the estate must be disposed of in accordance with the directions contained in the will.

2. In administration proceedings under a foreign will admitted to probate in this State, the construction placed upon it by the proper court of the state where the testator resided will be adopted by our courts, unless it can be clearly gathered from its terms that the testator had in mind the laws of this State, or used language necessarily referring and only appropriate to this State.

3. Where a will directs the testator to convert certain real estate in one state into rentable "inside" property in a specified city in another state, as soon as practicable after the testator's death, irrespective of all contingencies, an equitable conversion of said real estate is effected by the terms of the will.

4. Double conversion does not differ from single conversion, but the property is treated as if already converted into that species of property into which it is directed to be changed, no matter whether the steps are more or less numerous.

5. The object of How. Stat. § 5531, which prohibits the suspension of the absolute power of alienation for a longer period than during the continuance of two lives in being at the creation of the estate, was to prevent the accumulation of large landed estates to be held in perpetuity, or for a long series of years, and said statute is not violated by the direction in a foreign will, admitted to probate in this State, that Michigan lands shall be sold, and the proceeds invested in lands in another state, there to be held for any number of lives.

Appeal from Kalamazoo. (Buck, J.) Argued January 15 and 16, 1890. Decided April 11, 1890.

Bill to construe will. Defendant Marcus C. Ford appeals. Affirmed. The facts are stated in the opinion.

*E. M. Fish* (*Irish, Knappen & Frost* and *I. C. Sloan*, of counsel), for complainant.

*Pinney & Sanborn* and *Osborn & Mills*, for defendant Marcus C. Ford.

*Gregory & Gregory* and *J. L. Hawes*, for defendants Trustees of Hamilton College.

LONG, J. The bill is filed in this cause by Joseph C. Ford, as executor of the last will and testament of Francis F. Ford, deceased, to determine the power of the executor under such will to sell certain lands situated in this State. The will reads as follows:

"Know all men by these presents, that I, Francis F. Ford, of the city of Madison, county of Dane, and State of Wisconsin, being of sound disposing mind and memory, do make, publish, and declare this to be my last will and tastament, in terms following, to wit:

"1. I direct that all my lawful debts, funeral expenses included, shall be paid as soon after my decease as practicable, out of moneys on hand, or, if need be, from the income of my estate.

"2. It is my will, and I so direct, that the necessary expenses of carrying my estate from year to year be paid from the income thereof.

"3. It is my will, and I so direct, that all indebtedness from any of my brothers to me shall be, and hereby is, canceled, and the legal evidence of such indebtedness shall be returned to the makers thereof.

"4. I direct that all properties in Schedule A attached to this instrument, and bearing my signature, shall be converted, as soon as practicable after my decease, into rentable 'inside' property in Kansas City, Mo., at schedule prices, or as much better as may be.

"5. I also direct that the several properties in Schedule B attached to this instrument, and bearing my signature, shall, at the discretion of my executors, either be sold, and the proceeds thereof be invested in more desirable renting property in Kansas City, or said proceeds be used in improving some one or more of my Kansas City properties.

"6. I also direct that all moneys, notes, bonds, mortgages, or other evidences of indebtedness to me from any and all parties, except my brothers, shall, as soon as practicable after my decease, be used either in the purchase of property in Kansas City, or for improving properties in said city then on hand.

"7. It is my will, and I so direct, that my wife, Maggie, shall have the use of my homestead, furniture and appurtenances, located on Spaight street, Madison, Wis., so long as she may desire to live in it as her home. In case at any time she shall cease to desire it as her home, I direct that as soon thereafter as practicable it be sold at a price not less than ten thousand dollars ($10,000), or as much more as the property will bring, and the proceeds thereof be invested in good rentable property in Kansas City, Mo., and the rentals of such property be added to the income of the estate.

"8. It is my will, and I so direct, that, in addition to the use of said homestead and furniture, my said wife, Maggie, shall have one-quarter of the net annual income of the remainder of my estate during her natural life, subject to modifications in article 12 of this instrument. And it is expressly stipulated that the above bequests to my said wife are in lieu of dower.

"9. It is my will, and I so direct, that my son, Marcus C. Ford, shall have one-quarter of the net annual income

of my estate (homestead not included) until such time as, in accordance with the provisions of this will hereinafter named, he shall come into possession of the entire estate; but the expenditure and use of said income during his minority shall be under the control and direction of his guardian. And I appoint his mother his guardian during his minority, and, in the event of her death, I appoint my brothers Edward I. and Henry T. in her place.

"10. It is my will, and I so direct, that my brother Edward Irving shall have one-quarter of the net annual income of my estate (homestead not included) during his natural life.

"11. It is my will, and I so direct, that my brothers Joseph C. and Henry T. shall each have one-eighth of the net annual income of my estate (homestead not included) during their natural lives.

"12. It is my will, and I so direct, that when my son, Marcus C., reaches his majority, he shall become the owner in fee of ten thousand dollars ($10,000) worth of my real estate; and at twenty-five (25) years of age he shall have an additional twenty thousand dollars ($20,000) worth of my real estate; and at thirty (30) years of age he shall have an additional twenty-five thousand dollars ($25,000) worth; and at thirty-five (35) years of age he shall have an additional forty-five thousand dollars ($45,-000) worth; and at forty (40) years of age the remainder of my estate shall become his. And I also direct that the income of my said wife, Maggie, shall be kept up to fifteen hundred dollars ($1,500); any deficit to be taken from the income of my son, Marcus C.; and, as an offset thereto, my son, Marcus C., shall be entitled to any excess in said wife's income over twenty-five hundred dollars ($2,500) a year.

"13. I also direct that, in the event my son, Marcus C., shall decease after reaching his majority, leaving one or more legitimate children of his body, that the income of forty thousand dollars ($40,000) worth of my estate, or so much thereof as may in prudence be necessary, shall be used for the proper support of such child or children until they shall severally become of legal age, when an equal part of the above-named principal and accrued interest shall become his or hers absolutely.

"14. In the event that my son, Marcus C., shall survive all my other legatees, and then die before coming

into possession of my whole estate, it is my will, and I so direct, that the remainder of my estate, as of that date, shall belong to the Hamilton College, located at Clinton, New York, to be used in the endowment of some new professorship, and the remainder to be used at the discretion of the trustees of said college, in the erection of some building for college uses, or the endowment of additional professorships; such buildings or professorships to bear my name.

"15. If either my wife, Maggie, or one of my brothers, shall become my only surviving legatee, it is my will, in that event, and I so direct, that my estate at that time be divided as nearly as may be into two (2) equal parts, as regards the value and renting power, and said wife or brothers shall then choose between the income of said (2) properties, and have and enjoy the same during his or her natural life. And it is my will that the other part of my estate shall at that date become the property of Hamilton College to be used as directed in article fourteen in this instrument. And I further direct that, at the death of said wife or brother, the remaining part of my estate shall become the property of Hamilton College, to be used as in article fourteen.

"I hereby appoint my two brothers, Joseph C. and Henry T. Ford, as executors of this my last will and testament."

The Michigan lands are described in Schedule A, referred to in the will, as follows:

## "KALAMAZOO PROPERTY, MICH.

"No. 2.    All of block 7, except north half of lots 3 and 4; also the north half of lots 1 and 2, in block 4; together with all the buildings, machinery, tools, engine, boilers, and fixtures thereon, and whatever else may belong to me.    Value of all property in block 7, $25,000. Estimated value, $40,000.    Value of property in block 4, $2,000.    Estimated value, $3,000."

The testator, Francis F. Ford, was a resident of and domiciled in the county of Dane, state of Wisconsin, at the time of the execution of the will, and at the time of his decease, January 26, 1886.  He left surviving him his widow, Margaret G. Ford, his son, Marcus C. Ford, then about twelve years of age, and three brothers, Edward

Irving, Joseph C., and Henry T. Ford. The will heretofore set forth was admitted to probate in the county court of Dane county, May 17, 1886, and letters testamentary issued to Joseph C. Ford, one of the executors named in the will, who accepted and duly qualified as such. The other executor named in the will, Henry T. Ford, did not accept the trust. The executor, being in doubt as to the meaning and validity of some of the provisions of the will, brought an action in the circuit court for Dane county, Wis., which was taken by appeal to the supreme court of that state, and by that court the will was construed in most of its provisions. That case is reported in 70 Wis. 19 (33 N. W. Rep. 188).

The executor subsequently took proceedings in the probate court of Kalamazoo county, in this State, under How. Stat. § 5805, for the probate and allowance of the will in this State, and in which court the will was duly admitted to probate. The widow, Margaret G. Ford, renounced all claim under the will, and elected to take under the statute. This was done in writing, and filed in the probate court of Kalamazoo county, as provided by our statute. This bill was filed in the circuit court in chancery of Kalamazoo county, to determine the power of the executor to sell the lands so situated in that county. The parties to the proceedings taken in Wisconsin are the parties to the present bill.

On the hearing in the court below, it was adjudged and decreed that,—

" The real estate described is vested in complainant, Joseph C. Ford, as sole executor of said will, as trustee, subject to the right of dower in said land of defendant Margaret G. Ford, as widow of said testator; that said executor has power, and is authorized as executor and trustee, to receive the share of the rents, income, and profits thereof belonging to said estate; that as such executor and trustee he has power, and is authorized and

directed, to sell said real estate at the best price he can obtain therefor, subject to the dower right of said Margaret G. Ford, and convert the same into money, and out of the rents, income, and proceeds of said real estate to pay all claims that have been proved before the commissioners of said estate, and reported by them to the probate court of Kalamazoo county.

"It is further ordered that said bill be dismissed, with taxable costs, as to defendant Grace P. Ford, and that the defendants Margaret G. Ford and trustees of Hamilton College do recover their costs to be taxed, to be paid out of said estate."

From this decree the defendant Marcus C. Ford alone appeals.

Complainant, as well as the defendants Marcus C. Ford and trustees of Hamilton College, appeared in this Court by counsel, and the cause has been very fully argued here by able counsel of Wisconsin, as well as of this State, and we have the benefit of their views in the determination of the questions presented for our consideration.

It is contended here by counsel for the appellant:

1. That the provisions of the will creating the trusts illegally suspend the absolute power of alienation for a longer period than is prescribed by the laws of Michigan.

2. That the trust attempted to be created by the fourteenth and fifteenth paragraphs of the will is a trust prohibited by the laws of this State, and that the provisions of the will in favor of Hamilton College are void.

It is further contended by counsel for appellant that the direction to sell contained in the fourth paragraph of the will is not absolute and unconditional, and therefore wrought no change in the legal character or *status* of the lands in this State.

The fourth paragraph of the will reads as follows:

"I direct that all properties in Schedule A attached to this instrument, and bearing my signature, shall be converted, as soon as practicable after my decease, into rentable 'inside' property in Kansas City, Mo., at schedule prices, or as much better as may be."

Schedule A, referred to in this paragraph, includes these Michigan lands. The supreme court of Wisconsin, in the case above referred to, and in the subsequent case of *Ford v. Ford*, reported in 72 Wis. 621 (40 N. W. Rep. 502), gave a construction to the will in question, so far as ascertaining the true intent and meaning of the testator, and in this consideration gave construction to the fourth paragraph above quoted. It was said by the court (70 Wis. 50):

"The scheme of his will indicates an intention to have his lands in Michigan and Kansas sold as soon as practicable, and the proceeds thereof invested in real estate in Kansas City. * * * Some discretion may be given as to the time or times of making such sales and investments, without preventing the application of the doctrine of equitable conversion. The only purpose manifest in the will for selling any of the Michigan or Kansas lands is to invest the proceeds of such sales in real estate in Kansas City, and then to hold such lands in that city as a part of the estate during the time and for the purposes indicated in the will. If such permanent investment can be lawfully made, and such lands so lawfully held, then we discover no reason why the doctrine of equitable conversion should not apply to them."

It was further said by the learned judge who wrote that opinion:

"What has been thus said is not by way of determining the validity of the title to any lands outside of Wisconsin, nor the validity of any investment or trust in or tenure of such lands, but merely to ascertain the meaning and intent of the testator from the language employed in the will, which, as we have seen, is a duty devolving upon this jurisdiction."

Thus it will be seen the court of Wisconsin acted upon the assumption that it was the duty of that court to absolutely construe the will of the testator, he being domiciled in Wisconsin, not only as to the real and personal estate situate in Wisconsin, but also as to the realty,

80 MICH.—4.

wherever situated, so far as to ascertain the true intent
and meaning of the testator in making disposition of his
whole estate, although holding that the validity of the
provisions, with reference to lands in other jurisdictions,
must be determined by the courts sitting within those
jurisdictions. The testator at the time of the execution
of the will, and at the time of his death, was domiciled
in the state of Wisconsin, and the will was originally
admitted to probate in the courts of that state; the pro-
ceedings in this State for the probate of the will being,
under our statutes, only ancillary.

It is provided by How. Stat. § 5808, that—

"When any will shall be allowed as mentioned in the
preceding section [the preceding section has reference to
the probate of foreign wills within this State], the pro-
bate court shall grant letters testamentary or letters of
administration with the will annexed; and such letters
testamentary or letters of administration shall extend to
all the estate of the testator in this State; and such
estate, after the payment of his just debts and expenses
of administration, shall be disposed of according to such
will, so far as such will may operate upon it; and the
residue shall be disposed of as is provided by law in cases
of estates in this State belonging to persons who are in-
habitants of any other state or country."

Under the provisions of this statute, the estate must be
disposed of in accordance with the direction contained in
the will. Are we, then, to take the will in this State,
under this ancillary proceeding, and construe it, as to the
true intent and meaning of the testator, as an original
question, and without reference to the decision of the
domiciliary court, or must we be guided by the construc-
tion as to the meaning of the testator by the interpreta-
tion given it by that court?

In our view of the case, the question does not become
of much importance, but we think the law well settled
that, the meaning and intent of the testator having been

settled by the domiciliary court, the courts in foreign states and countries will be guided by such construction, unless it can be clearly gathered, from the terms used in the will, that the testator had in mind the law of the place of the *situs*, or used language necessarily referring to the usages and appropriate only to the *situs*. This seems to be the settled rule in England, as well as in this country. *Trotter v. Trotter*, 4 Bligh (N. S.), 502.

In *Boyes v. Bedale*, 1 Hem. & M. 805, the vice-chancellor, speaking of this rule, says:

" The rule applied is in fact nothing more than a branch of the larger rule by which the *lex loci contractus vel actus* is held to govern questions of construction, and it rests on the common-sense view that a testator may well suppose that his language is to bear the sense which it has according to the law of the country where he is domiciled."

Story, in his Conflict of Laws, § 479*a*, says as to wills:

"The general rule of the common law is that it is to be construed according to the law of the place of his domicile in which it is made."

This rule is also followed in *Harrison v. Nixon*, 9 Pet. 483. This rule has also been followed in most, if not all, of our sister states where the question has arisen. *Crusoe v. Butler*, 36 Miss. 150; *Caulfield v. Sullivan*, 85 N. Y. 153; *Washburn v. Van Steenwyk*, 32 Minn. 336 (20 N. W. Rep. 324); *Cone v. Hooper*, 18 Id. 531; *Guerard v. Guerard*, 73 Ga. 506.

Aside from these considerations, however, we are satisfied that it was the intention of the testator, as indicated by the terms of the will, to give to his executors the absolute power to sell and convey the Michigan lands, and this without condition or limitation; the words in paragraph 4, " at schedule prices, or as much better as may be," only being used by him as advisory to the

executor to obtain the best possible price. This para-. graph in connection with the remaining portions of the will indicates and expresses a strong desire on his part to have his estate concentrated in Kansas City. In fact, the whole plan and scheme of the will is an unmistakable desire and direction that all his properties should be converted into Kansas City properties. Courts, in construing wills, are bound to give that construction which shall carry out the intention of the testator, if such intention can be ascertained from the terms of the will. This intention being ascertained, courts will carry out its terms, so far as lawful. *Cummings v. Corey,* 58 Mich. 494 (25 N. W. Rep. 481); *Tracy v. Murray,* 49 Id. 35 (12 N. W. Rep. 900).

The true intent and meaning of the testator having thus been ascertained, so far as relates to his Michigan lands, it is now important to ascertain what effect the will has upon these lands, and how far the executor may proceed in their disposition. The direction that the exchange should be made is imperative, and, as we have seen, without condition. Equity must, therefore, consider that done which the testator lawfully directed, unless such disposition is unlawful, or, as counsel contend, affected by our statute against perpetuities, which we shall consider further on. We have no doubt that this equitable conversion was effected by the terms of the will. The matter is not left discretionary with the executor, but is imperative, and the conversion is to be made out and out, irrespective of all contingencies. This doctrine is fully settled in this State in *Shaw v. Chambers,* 48 Mich. 359 (12 N. W. Rep. 486), and cases there cited. This whole subject is so fully discussed by Mr. Justice Cassoday in *Ford v. Ford,* 70 Wis. 19 (33 N. W. Rep. 188), that we refer to that case, and the authorities

there cited, fully settling the question as applicable to this will.

It is contended, however, by the learned counsel for the appellant, that the case of *Shaw v. Chambers* and the cases there cited, and the cases cited by the Wisconsin court, do not sustain the position that the direction contained in the will works an equitable conversion; that all of them are cases in respect to a direction for the investment of personal estate into real estate, or the investment of the proceeds of real estate converted generally, out and out, into personalty for all purposes, and not having the attribute or incidents of realty in any respect whatever. It is further contended that the direction for the conversion of real estate in Michigan into real estate in Missouri will compel the courts of Michigan, under the construction contended for by the executor, to administer the law of a foreign state, instead of the *lex rei sitæ*. In other words, that the direction in the will is for a double conversion,—first, into personalty; and then the investment of the proceeds in lands in Missouri. Double conversion does not differ, however, from single conversion, but the property is treated as if already converted into that species of property into which it is directed to be changed, no matter whether the steps are more or less numerous. The rule is laid down in 3 Pom. Eq. Jur. § 1178, that a double conversion takes place when land is directed to be sold and converted into money, and these proceeds are directed to be laid out again in land, the whole forming one continuous obligation. The property, in such cases, is considered to be in that state in which it is ultimately to be converted; that is, to be land. This rule does not, as will presently be seen, require this Court to pass upon or administer the laws of Missouri. This question will, however, be discussed under another head.

It is evident that the will, in some of its parts, in providing for the investment of the estate in lands in Missouri, and designating the parties who are to take upon certain contingencies, and in fixing the time when such estates are to vest, would, if to be administered in this State, be in violation of our statute against perpetuities.    How. Stat. § 5531, provides:

" The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section."

The next section does not affect the question in issue.

The direction is that his son, Marcus, shall have one-quarter of the net annual income, until such time as he shall come into the possession of the entire estate; that his brother Edward Irving shall have one-quarter, and his brothers Joseph C. and Henry T. shall each have an eighth, of such annual income. It is further directed that Marcus shall have, when attaining his majority, $10,000 worth of real estate; when 25, an additional $20,000; when 30, an additional $25,000; and at 35, an additional $45,000 worth of real estate; and when 40 years of age, the remainder of the estate. In event that Marcus shall decease after reaching his majority leaving one or more legitimate children, the income of $40,000, or so much as is necessary, is to be set apart for their support until of legal age, and then to be paid over to them absolutely. In the event that Marcus shall survive all the other legatees, and die before coming into possession of the whole estate, the remainder is to go to Hamilton College. In the event that his wife, Maggie, or one of the brothers, shall become the only surviving legatee, the estate is to be divided into two equal parts, and the wife or brother to take one part for life, the other part

to go to Hamilton College, to be used as directed in article 14 of the will.

It is claimed by counsel for the executor that these trusts are separable and several in their nature and character, and that the share of the estate producing the income belonging to each legatee, respectively, is only tied up in trust during two lives,—that is, during the life of Marcus and of such legatee; and that the will is to be regarded in the same light that it would have been if it had created five distinct trusts, and that they would all terminate on Marcus reaching the age of 40 years, and that therefore these trusts do not violate the rule against perpetuities. It will be observed, however, that the trust is not for the payment of a certain sum in gross. It is entirely uncertain in amount, and the executor is required to retain the estate until the right of the surviving party entitled to a definite proportion of its net income alone survives, which is beyond two lives in being at the creation of the estate.

The fact, however, that these trusts would be void under our statute, does not prevent the equitable conversion of the lands in this State into Missouri lands, though such lands in Missouri may be tied up beyond the time limited by the Michigan statutes. The direction is for a conversion of these Michigan lands,—an absolute sale and disposition of them. The object of our statute was to prevent the lands within this State from being taken out of the channels of trade and the accumulation of large landed estates to be held in perpetuity, or for a long series of years. The only act which the executor is required to perform in Michigan is to make the sale; the proceeds to be taken to Missouri, and there invested. Our statute is in no sense violated by the direction in the will that the estate, after conversion here, is to be invested in Missouri lands, and there held for any number of

lives. The testator, in ordering his estate to be invested' in Missouri lands, must be presumed to have intended to submit to the jurisdiction and laws of that state. Whether the trusts created by the will are in violation of the Missouri statute is a question for that jurisdiction, and not for us, to determine. It must be held that the executor has the absolute power to sell the Michigan lands under the fourth clause of the will. We find no error in the conclusion reached by the court below, and the decree must be affirmed, the costs to be paid out of the estate. The trustees of Hamilton College have been compelled to defend their claims under the will, and must also be allowed costs out of the estate.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred.