## WILLIE v. WAGGONER et al.

### No. 9435.

Court of Civil Appeals of Texas. Austin.
May 24, 1944.

Rehearing Denied June 7, 1944.

320

Dan Moody and Emmett Shelton, both of Austin, for appellant.

Hart & Brown, W. D. Hart, and James P. Hart, all of Austin, for appellees.

BLAIR, Justice.

This litigation arose out of the following facts and transactions:

On February 18, 1943, D. T. Cunningham, a bachelor, executed his last will and testament, paragraphs 3 and 4 of which read as follows:

"3. I give and devise to my good friend, Travis Waggoner, of Travis County, Texas, my ranch of 365 acres of land, more or less, located in Hays and Travis County, Texas, with the understanding that the said Travis Waggoner shall pay all the expenses of my last illness, including the hospital and medicine and physician's expenses, if any, and the expense of erecting the above described tombstone, burial expenses and the expense of probating my will, and it is my will and desire that the above described property shall pass to and vest in fee simple in my good friend, the said Travis Waggoner. ·

"4. It is my will and desire that all of the remaining part of my property, besides the above described ranch that I hereby devise and give to the said Travis Waggoner, both real and personal, including all of my money, notes, mortgages, stock and other property, I may die seized and possessed of, after the payment of all of my just debts out of the said property besides the debts specifically listed above that are to be paid by the said Travis Waggoner, shall pass to and vest in fee simple in my beloved sister, Mrs. Maggie E. Willie, of Travis County, Texas, and I give, bequeath and demise to my beloved sister, Mrs. Maggie Willie, the remainder of all of the prop-

erty that I may now own or be interested in at the time of my death, in fee simple, to manage, sell, or dispose of as she may wish or see proper."

The two devisees, Travis Waggoner, a friend and business associate of testator, and Mrs. Maggie E. Willie, a widow and the sister of testator, were appointed as independent executor and executrix of the will without bond.

On May 31, 1943, D. T. Cunningham accepted, by signing his name over the words "approved and accepted by", the "purchaser's agreement" of Ernest Wiedebusch to buy the 365-acre ranch devised to Travis Waggoner by paragraph 3 of the will. The consideration recited was $12,000, of which $8,000 was to be paid in cash, and $4,000 by a vendor's lien note. The agreement further recited that purchaser tendered $1,000 "which is to evidence my good faith and to apply as part of the purchase price, same to be held in escrow by Frank Reeder," who was the real estate agent who secured the execution of the purchaser's agreement, which further recited:

"Should I fail or refuse to fulfill this agreement according to the terms and conditions above set forth, then I agree that the above described deposit shall be forfeited as liquidated damages to the seller and his agent Frank Reeder."

No abstract was furnished and nothing appears to have been done to complete the sale of the land prior to the death of D. T. Cunningham, on June 15, 1943. The will was offered for probate on June 17, 1943, and was duly probated June 28, 1943, and the two devisees, Waggoner and Mrs. Willie, duly qualified as independent executor and executrix under the will.

Mrs. Willie lived with her brother (testator) on the ranch in question. After his death she visited in the home of Waggoner several days. On June 17, 1943, she and Waggoner went to the bank where testator kept his papers, including his will. Waggoner did not know he was a beneficiary and was not present when the will was first read to Mrs. Willie; but he was sent for, and the two then went to advise with Judge Archer, and the two offered the will for probation on that date, and it was duly probated on June 28, 1943. On the way to Judge Archer's office, Mrs. Willie told Waggoner that she was glad her brother left the ranch to him, and that she did not

want any of the "nephews" to share in the estate.

Waggoner did not know of the contract to sell the ranch to Wiedebusch until about a week after the death of testator, when he found the purchaser's agreement at the time he and Mrs. Willie were looking through testator's papers at the ranch. Mrs. Willie knew of the contract, because she had signed it as a witness. She told Waggoner at the time that "the contract didn't mean anything and that she wanted me to have the place; that Tom thought a lot of me, and she was going to see that I had it." A week later Mrs. Willie told Wiedebusch that he could not have the ranch; that it had been willed to Waggoner; and that she was going to see that Waggoner got it.

On or about July 1, 1943, Waggoner received information that Mrs. Willie was dissatisfied with the terms of the will and was talking of trying to break it. After consulting her attorney, however, she decided not to try to break the will, because by doing so the nephews would take part of the estate, and she would only get about one-third of it, whereas she was getting about one-half under the will.

On July 8, 1943, both Waggoner and Mrs. Willie again discussed the settlement of the estate with Judge Archer, and discussed the contract to sell the ranch to Wiedebusch. In accordance with his advice a deed was executed by Mrs. Willie, as independent executrix, containing a general warranty of title, conveying the ranch to Travis Waggoner; the deed reciting that its purpose was to carry out the terms of the will of Cunningham devising the ranch to Waggoner. The date of this deed was July 8, 1943, and was signed and acknowledged by Mrs. Willie on that date and delivered to Waggoner. On the same date Waggoner executed and delivered an instrument transferring and releasing to Mrs. Willie all claim to the other property, including vendor's lien notes and cash. Before these instruments were executed Waggoner and Mrs. Willie agreed that he should pay immediately the expenses provided for in the will as a condition to taking the ranch thereunder; which he did by paying $977.50 as funeral expenses, probate costs, taxes, etc., and agreeing to pay for a monument ordered for testator's grave, and which he testified he would not have paid but for these agreements to so settle the estate with Mrs. Willie. Wag-

goner further testified that acting on these settlements with Mrs. Willie, and the advice of Judge Archer, he did on July 12 and 13, 1943, effect a settlement with Wiedebusch on his contract to purchase the ranch, by paying Wiedebusch $250, and paying Reeder $600, and by returning to Wiedebusch the $1,000 earnest money deposited with Reeder. When this compromise settlement was made Wiedebusch surrendered his copy of the purchaser's agreement to Waggoner and endorsed thereon, "I transfer and surrender this to Travis Waggoner," signing the endorsement. Waggoner further testified that he borrowed the $850 from a bank to so settle with Wiedebusch, and that he would not have done so, nor would he have made the other aforementioned payments but for his agreements with Mrs. Willie and the provisions of the will with respect to the payment of the expenses therein stated.

On July 18, 1943, Waggoner wrote Mrs. Willie, requesting possession of the ranch. Waggoner testified that about two days later Mrs. Willie made the following statement to him:

"After she got my letter she came by and asked me if I wrote that letter, and I said, 'Yes,' and she asked me what did I mean, and I told her the place belonged to me; that I had a deed to it and that I would like to have the use of it. She said, 'All right.' She said, 'I am going to take you to court and cause you plenty of misery.'"

Later, Mrs. Willie instituted this suit, "as legatee under the will of D. T. Cunningham and as independent executrix of said will," against Travis Waggoner, individually and as independent executor of the will of D. T. Cunningham, and Ernest Wiedebusch. She alleged that the execution of the contract by testator to sell the ranch land to Wiedebusch, subsequent to the execution of the will by which testator devised the ranch land to Waggoner, worked an ademption of the devise and an equitable conversion of the ranch land into personalty, which passed to her under paragraph 4 of the will, or to her as the residuary legatee under paragraph 4 of the will. She further alleged that Waggoner knew she was entitled to the proceeds of the sale of the ranch land, but caused her to sign the deed to him, which she executed under mistake of law and fact and without consideration, and prayed that the recorded deed be removed as cloud upon her title to the land. She further alleged that the contract of

sale of the land was capable of being specifically performed, and prayed for the specific performance of it against both Wiedebusch and Waggoner, or, in the alternative, for damages in the sum of $12,000, to be secured by an equitable lien upon the land.

Wiedebusch was dismissed from the suit, and no complaint is made as to the judgment of dismissal.

Waggoner set up the foregoing facts and transactions as defenses to the suit of Mrs. Willie, and by cross-action interposed a plea in trespass to try title to recover the ranch land, which the court trying the case without a jury sustained upon the following two grounds, which we sustain:

1. The written contract of testator to sell the ranch land to Wiedebusch was incapable of being specifically enforced in equity, and in consequence there was no ademption of the devise of it to Waggoner by the will of testator, and no equitable conversion of it into personalty was effected by the contract to sell.

2. The foregoing facts and transactions, and particularly the execution of the deed by Mrs. Willie conveying the ranch land to Waggoner, estop her from asserting that he has no right to the ranch land.

■ Whether the contract to sell the ranch land to Wiedebusch worked an ademption of the devise of it to Waggoner and an equitable conversion of it into personalty as affects the provisions of the will of Cunningham, turns upon the question of whether a court of equity could compel Wiedebusch to specifically perform his purchaser's agreement. Hardcastle v. Sibley, Tex.Civ.App., 107 S.W.2d 432, writ refused. The rule is succinctly stated in 18 C.J.S., Conversion, § 9, p. 50, as follows:

"In order to work a conversion, the contract must be valid and binding, free from all inequitable imperfections, and such as a court of equity will specifically enforce against an unwilling purchaser."

See Thompson v. Ford, 145 Tenn. 335, 236 S.W. 2.

■ The contract to sell the ranch land to Wiedebusch could not be specifically enforced against him by a court of equity. It provides that the $1,000 deposit with Reeder is to evidence the good faith of Wiedebusch and to apply as a part of the purchase price if the sale is completed; and that if Wiedebusch fails or refuses to fulfill his agreement to purchase the land, the "deposit shall be forfeited as liquidated damages to the seller and his agent, Frank Reeder." The contract clearly gives Wiedebusch the right to· elect to perform or to pay the $1,000 as liquidated damages, and in consequence a court of equity could not compel him to specifically perform it. A similar contract was construed in the case of Huffhines v. Bourland, Tex.Com. App., 280 S.W. 561, 562, wherein the court said:

"In such a case the seller will be held to have chosen to rely, in case of the purchaser's failure to perform his contract of purchase, upon his legal action for damages, and to have waived the equitable remedy of specific performance which he might· otherwise have had but for such election."

If some conflict has existed in decisions of Courts of Civil Appeals on the question, the rule is now definitely settled in accordance with the rule stated in the Huffhines v. Bourland case. Middleton v. Moore, Tex. Civ.App., 289 S.W. 1045; Blair v. Bird, Tex.Civ.App., 20 S.W.2d 843; Slaughter v. Daniels, Tex.Civ.App., 127 S.W.2d 317, 318, writ refused, wherein the rules found in 13 Tex.Jur. 119 and 43 Tex. Jur. 132, are quoted as follows:

"'A stipulation contained in a contract of sale to the effect that a sum of money shall be paid to the seller in case he fulfills his obligations and the purchaser fails to perform his obligation to purchase, carries with it the necessary implication that the seller binds himself, by the stipulation, to accept such sum as compensation for his loss resulting from the happening of the contingency named.' * * *

"'But when the vendor has agreed to accept a certain sum in satisfaction of a breach of contract by the purchaser, he is not entitled to a greater sum nor to specific performance.'"

■ Since the contract to sell the ranch land could not be enforced by testator against Wiedebusch, there was no ademption of the devise of it to Waggoner under paragraphs 3 and 4 of the will. No equitable conversion was effected by the contract and the land remained as realty both before and after the death of testator. This conclusion is decisive of the entire case, and the alternative claim of estoppel of Mrs. Willie to deny the title of Wag-

goner need not be discussed further than to say that the foregoing facts and transactions estop her from asserting that Waggoner has no right or title to the ranch land.

The trial Court's judgment is affirmed.

Affirmed.