**Maudie ORR et al., Appellants,**

**v.**

**C. U. POPE et al., Appellees.**

**No. 7570.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 21, 1966.

Gene E. Steed, Perryton, Linn & Helms, Spearman, for appellant.

Allen, Allen & Reavis, Perryton, Jerry J. Miller, Amarillo, for Phillips Petroleum Co.

DENTON, Chief Justice.

This trespass to try title suit was brought by Appellees, C. U. Pope, his brothers and sisters and the children of his deceased brother and sisters, all either children or grandchildren of W. L. Pope, Sr., and Lula Pope, both deceased, against the heirs at law of Eunice Pope, deceased, wife of W. L. Pope, Jr. Plaintiffs below seek to recover title and possession of an undivided one-half (½) interest in the surface of the:

N.W. ⅓ of Section 140, Block 4T, T. & N. O. Ry. Co. Survey, Ochiltree County, Texas;

and an undivided one-fourteenth (1/14) of the mineral interest of that section. All parties filed motions for summary judgment and the trial court granted plaintiffs'

motion and defendants below have perfected this appeal.

Plaintiffs C. U. Pope, Alice Pope Fling, Tillman B. Pope and Sally Pope Cocannoeur are the surviving children of W. L. and Lula Pope; Anna Louise Pope VanSant, Jackie Lee Pope and Alfred J. Pope the surviving children of H. B. Pope, deceased, a son of W. L. and Lula Pope; Floy McAllister, Morgan and Pauline McNeeley and Orbye McAllister the surviving children of Ethel Pope McAllister, deceased, a daughter of Mr. and Mrs. Pope, brought this suit against Maudie Orr, Earl Appleton, Ivan Appleton, Rubert Appleton and Bonnie Bealmuer, all brothers and sisters of Eunice Pope, deceased, wife of W. L. Pope, Jr. Phillips Petroleum Company, the owner of a certain pipe line right-of-way and an oil and gas mineral lease of the property involved was impleaded as a party defendant. All parties hereto have recognized Phillips' interest and that issue is not before us.

The material facts are undisputed. The case was submitted to the trial court on the pleadings, affidavits, stipulations, depositions, admissions and interrogatories. W. L. Pope, Sr. and wife, Lula Pope were the owners of all of Section 140. It constituted their community property and they are the common source of title. Lula Pope predeceased her husband intestate, and there was no administration of her estate. The seven children named above were born of this marriage. W. L. Pope, Sr., died testate in 1945 and his will was probated on July 10, 1945. This will devised various mineral and surface interests to the named children or their heirs and included a devise to W. L. Pope, Jr., of the surface rights to the N.W. ¼ of Section 140. On June 7, 1945, all heirs at law of W. L. Pope, Sr. and Lula Pope, except C. U. Pope, executed a quit claim deed conveying all of Section 140 to C. U. Pope. Thereafter, on July 10, 1945, C. U. Pope joined by his wife, Fern Pope, executed a series of warranty deeds and mineral deeds conveying to the various heirs certain interests

in Section 140. Two of these deeds included a mineral deed conveying an undivided ⅓ of the minerals under Section 140 and a warranty deed conveying the surface of the N.W. ⅓ of Section 140 to W. L. Pope, Jr., containing 213.33 acres, subject to ⅓ of the outstanding indebtedness owed to the Federal Land Bank. Both deeds recited that W. L. Pope, Jr., was a resident of Multnomah County, State of Oregon. W. L. Pope, Jr., died intestate on January 6, 1958, and his surviving wife, Eunice Pope, died intestate on September 16, 1962. No children were born of this marriage and none were adopted. Appellants, the natural brothers and sisters of Eunice Pope, are her only surviving heirs at law.

The primary question to be determined is whether the surface and mineral interests so acquired by W. L. Pope, Jr. was his separate or community property. Appellants contend the property having been acquired by W. L. Pope, Jr. while he was married to Eunice Pope is presumed to be community property; that such presumption was not rebutted and that upon the death of Eunice Pope, the survivor, the property was inherited by appellants under the laws of descent and distribution of the State of Texas. Appellants concede the undivided 125.7 acres of Section 140 may have originally been the separate property of W. L. Pope, Jr., by virtue of his inheritance of approximately 45.7 acres from his mother and the 80 acres bequeathed by his father's will; but that this property has been co-mingled with the balance of the property he later acquired, and that therefore, all such property became community property. These general principles of law are sound but the question is whether or not these well-established principles are applicable under the uncontroverted facts of this case.

We have concluded the judgment of the trial court should be affirmed. In the first place, it is the law of this state that where a husband acquired real prop-

erty situated in Texas while he resides in a common law state, the real property is the separate property of the husband.. Huston v. Colonial Trust Company (Tex.Civ. App.) 266 S.W.2d 231 (Ref. N.R.E.); Tasher v. Foster Lumber Company (Tex. Civ.App.) 205 S.W.2d 665; Toledo Society for Crippled Children v. Hickok (Tex.Civ. App.) 252 S.W.2d 739 (Modified by the Supreme Court) 152 Tex. 578, 261 S.W.2d 692, 43 A.L.R.2d 553; McDowell v. Harris (Tex.Civ.App.) 107 S.W.2d 647 (Error dismissed). It is uncontradicted that W. L. Pope, Jr. and wife, Eunice were residents of the State of Oregon at the time the two deeds of July 10, 1945, in which W. L. Pope, Jr. was grantee, were executed. It was established that at all times material to this question, Oregon was a common law state. This was established by written interrogatories propounded to an attorney · duly licensed by that state. Under the authorities and the state of this record, we conclude the undivided ½ mineral interest under Section 140 and the N.W. ⅓ of that section, conveyed to W. L. Pope, Jr. by C. U. Pope and wife was the separate property of the said W. L. Pope, Jr. at the time of such conveyance. It is settled that property acquired during marriage takes its status as separate or community property at the time of its acquisition, and that such status is fixed by the facts or circumstances by its acquisition at that time. Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529; Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777. By both the devise in W. L. Pope, Sr.'s will and the warranty deed of July 10, 1945, W. L. Pope, Jr., the devisee and grantee, assumed and obligated himself to pay the proportionate share of the indebtedness owed on Section 140. This does not in itself change the status of the property from separate to community. Smith v. Buss (supra); Henry v. Reinle (Tex.Civ.App.) 245 S.W.2d 743 (Ref. N.R.E.). The record shows W. L. Pope, Jr., paid the assumed indebtedness in the amount of $2,614.04, on October 20, 1945, but the record does not specifically show whether the funds so expended were the separate property of W. L. Pope, Jr., or community property or where he resided on this date. The check in payment of the obligation was drawn on a bank in Los Angeles, California, and there was deposition testimony that the couple left Oregon in October, 1945, and moved to California. Assuming these funds were community, this would not change the status of the real property from separate to community. The separate status was set at the time title was acquired. The question of reimbursement to the community estate is a matter to be determined by appellants' cross-action. This asserted cause of action was severed by the trial court. We further conclude this record does not support the contention the so-called co-mingling doctrine is applicable under the facts of this case.

We think the property in question constituted the separate property of W. L. Pope, Jr., for another reason. An examination of the will, the quit claim deed of June 7, 1945, and the deeds of July 10, 1945, from C. U. Pope to W. L. Pope, Jr., and the others, together with the circumstances surrounding their execution reflect a plan of distribution by these parties of their deceased parents' estate. Family settlements of estates are looked upon with favor. Pleasant v. Johnson (Tex.Civ.App.) 367 S.W.2d 173 (Ref. N.R.E.) and cases cited therein. Lula Pope died intestate and there had been no distribution of her estate after her death. The attorney who handled the probate of the father's will testified by deposition the deeds were executed for the purpose of distributing the estate. An affidavit of Fern Pope, wife of C. U. Pope, corroborated this testimony. In support of their own motion for summary judgment, appellants attached an affidavit of heirship by appellee, C. U. Pope and wife, dated March 30, 1954. The affidavit named the heirs at law of W. L.,

Sr. and Lula Pope and contained the following language:

"That as a means of distributing the estates of the said W. L. Pope and wife, Lula Pope, all of the above named heirs except C. U. Pope executed and delivered a quitclaim deed dated June 7, 1945, recorded in Vol. 79, page 22, Deed Records in Ochiltree County, Texas, conveying all of their right, title and interest in the said Section 140 to C. U. Pope, and the said C. U. Pope and wife, Fern Pope, then executed and delivered a separate mineral deed to each of the other above named heirs of W. L. Pope and wife, Lula Pope, conveying to each of said heirs the same undivided mineral interest in said Section 140 as he or she would have taken under the will of W. L. Pope, deceased, and the laws of descent and distribution of the State of Texas."

\* \* \* \* \* \*

" \* \* \* said deeds were not intended to alter or change the separate character of the interests derived by each of said heirs by virtue of being an heir and devisee of W. L. Pope and wife, Lula Pope."

Although the affidavit made no reference to the warranty deeds executed by C. U. Pope and wife on the same date which conveyed the surface rights, we think the same plan was intended for the surface rights as the mineral rights. The fact all heirs were not deeded surface rights and that W. L. Pope, Jr. was deeded more acreage than he received by devise and inheritance does not alter this conclusion. It is uncontradicted the land in Section 140 was not of equal value and the estate consisted of a considerable amount of personal property, including over $5,000.00 in cash. The record does not show how the personal property was distributed, but under the circumstances it must be assumed the heirs who were not deeded surface rights received a proportionate share of the personalty. Evidence other than the deeds themselves is admissable to establish the character of the property acquired. Under this record the status of the property acquired by W. L. Pope, Jr., may be proven as any other fact by any competent evidence, including parole evidence, surrounding circumstances and declarations of the parties, if the latter evidence is otherwise admissable. Foster v. Christensen (Tex. Com.App.) 67 S.W.2d 246; Von Hutchins v. Pope (Tex.Civ.App.) 351 S.W.2d 642 (Ref. N.R.E.). We, therefore, conclude the summary judgment evidence supports the trial court's judgment.

Appellants further urge the trial court erred in severing appellants' counterclaim for reimbursement for money alleged to have been expended by the community estate in paying off the indebtedness against the property and for funds expended by them for farming operations, taxes, etc. A determination of the issue of severance involves the discretion of the trial court and the trial court's action in such matter will not be disturbed on appeal in the absence of abuse of that discretion. Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677. The merits or demerits of appellants' cross-action depends upon a determination of the character or the status of the property acquired by W. L. Pope, Jr. It is thus essential that that question be first determined. We cannot say the trial court abused its discretion in ordering the severance.

Finding no reversible error, all of appellants' points of error are overruled.

The judgment of the trial court is affirmed.