

# NUMBER 13-16-00054-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**NORMA LEA BAUER, ET AL.,** **Appellants,**

**v.**

**MARK WHITE, ET AL.,** **Appellees.**

---

### On appeal from the 267th District Court of Goliad County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

W.A. Gillan owned a 3/8 mineral interest in Texas land, and upon his death in

Nebraska in 1963, he devised fractional interests to his wife Mae Gillan and to his children

from a first marriage. The appellants are the heirs of Mae Gillan ("Mae Gillan heirs")[1] and the appellees are the heirs of the children from the first marriage ("W.A. Gillan heirs").[2] At issue is ownership of an undivided 3/16 mineral interest. Ownership depends on whether an undivided 3/8 interest was the separate property of W.A. Gillan or the community property of W.A. and Mae Gillan at the time of W.A.'s death. The trial court granted summary judgment in favor of the W.A. Gillan heirs on the theory that, given W.A.'s lifelong residence in the common law state of Nebraska, the mineral rights were W.A.'s separate property. By their sole issue on appeal, the Mae Gillan heirs contend that the mineral rights were community property under Texas law and that the trial court therefore erred by granting summary judgment in favor of the W.A. Gillan heirs. We reverse and remand.

## I. BACKGROUND

The facts of this case are largely undisputed. W.A. Gillan was born in Nebraska in 1913. He married Mae Gillan in Nebraska in 1937. While still residing in Nebraska in 1950, W.A. acquired an undivided 1/2 interest in the mineral estate underlying a 271.5-acre tract of land located in Goliad County, Texas. W.A. subsequently conveyed away a 1/8 undivided interest in the mineral estate, leaving an undivided 3/8 interest. W.A. lived in Nebraska until his death in 1963, and his will was probated in Nebraska. The will's residuary clause devised 1/3 of his interest to his wife Mae and devised 2/3 of his

---

[1] On appeal, the Mae Gillan heirs include Norma Lea Bauer, Lucinda Bondegard, Dale Cruise, Guy Cruise, Lee Cruise, Les Cruise, Marlene Cruise, Robert Cruise, Shirley Cruise, Wanda Cruise, Warren Cruise, Kathleen Edwards, Diane Malmstrom, Geraldine Talich, the "Ray L. Cruise 1991 Trust," and "the Robert Rowan Trust and Heirs of Robert Rowan care of Laura Leigh Rowan."

[2] The W.A. Gillan heirs include Mark White, Bulah Gillan, David G. Weyner, and Julie Weyner Drennan.

interest to his three children from his deceased first wife: Carol M. White (2/9), Lila B. Weyner (2/9), and Ralph H. Gillan (2/9).

In 2009, Etoco, LP filed this interpleader action concerning the mineral estate, naming both groups of heirs as defendants. *See* TEX. R. CIV. P. 43. Etoco operated oil and gas wells on the property and paid royalties to the two groups of heirs. Etoco's interpleader action sought an answer as to who owned what share of the mineral estate and who was entitled to the accompanying royalties.[3] Etoco stated it had received a formal demand from the W.A. Gillan heirs asserting that they were entitled to a greater share of the royalty payments. The W.A. Gillan heirs contended that the 3/8 interest was in fact W.A.'s separate property at the time of W.A.'s death.

The parties agree as to the consequences of determining the minerals' separate or community character. If the 3/8 interest in the mineral estate was W.A. Gillan's separate property, then Mae Gillan would have inherited an undivided 1/8 interest in the mineral estate pursuant to her 1/3 share under the will, and the W.A. Gillan heirs would have inherited an undivided 2/8 interest pursuant to their 2/3 share. However, if the mineral estate was community property, then Mae Gillan would have owned an undivided 1/4 of the mineral estate: she would have already owned an undivided 3/16 of the mineral estate as her half of the community interest, and would have inherited another undivided 1/16 of the estate under W.A.'s will (a 1/3 share of W.A.'s 3/16 community interest). The W.A. Gillan heirs would have inherited the remaining undivided 2/16 of

---

[3] The interpleader suit also named as defendants Gaylord Gerber, John D. Gerber, Jane Ruth Hinrichs, and the entities Big Sky Mineral Trust, S&C Properties, and Southwest Petroleum Company. These interpleader defendants were initially named among the Mae Gillan heirs, but they are not parties to this appeal.

3

W.A.'s community interest.

## II. STANDARD OF REVIEW

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661.

## III. PROPERTY AND MARRIAGE

Under the common law, a spouse's funds are generally his or her separate estate rather than community property. *See Oliver v. Robertson*, 41 Tex. 422, 425 (1874). Nebraska, unlike Texas, is not a community property state, but instead follows the common law rule. *See* NEB. REV. STAT. ANN. § 42-603 (West, Westlaw through 2016 2nd R.S.). Nebraska law provides that property acquired "shall not be regarded as community property unless the contrary be satisfactorily proved." *Id.*

The W.A. Gillan heirs contend that we should apply Nebraska law under a conflicts analysis because W.A. lived his entire life in Nebraska, married there, had children and acquired the property in question there, died there, and had his will probated there. However, Texas has an interest in resolving controversies involving real property within its borders. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009). It is well-settled that a royalty interest in an oil and gas lease is an interest in real

4

property, held to have the same attributes as real property. *Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762, 764 (Tex. App.—Corpus Christi 1998, pet. denied) (citing *Garza v. DeMontalvo*, 217 S.W.2d 988, 992 (Tex. 1949)). In determining the ownership of real property, we apply the law of the jurisdiction in which the land is located. *Turner v. Mullins*, 162 S.W.3d 356, 366 (Tex. App.—Fort Worth 2005, no pet.); *McCarver v. Trumble*, 660 S.W.2d 595, 597–98 (Tex. App.—Corpus Christi 1983, no writ); *see Haga v. Thomas*, 409 S.W.3d 731, 736 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Thus, contrary to the assertion of the W.A. Gillan heirs, Texas law controls the character of this Texas land.

Under Texas law, the character of property as either "community" or "separate" is determined by the inception of title to the property.[4] *Winkle v. Winkle*, 951 S.W.2d 80, 88 (Tex. App.—Corpus Christi 1997, pet. denied). Property purchased with one spouse's separate property is itself separate property—a concept commonly called "mutation." *Lewis v. Lewis*, 944 S.W.2d 630, 631 (Tex. 1997); *see Legrand-Brock v. Brock*, 246 S.W.3d 318, 321 (Tex. App.—Beaumont 2008, pet. denied).

The Mae Gillan heirs direct our attention to the rule that property possessed by either spouse on the dissolution of marriage is presumed to be community property. *See* TEX. FAM. CODE ANN. § 3.003 (West, Westlaw through 2015 R.S.); *Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). In *Smith v. Lanier*, the Austin Court of Appeals held that this rule applies with equal force when, as here, the marriage is "dissolved" by the death of a spouse. 998 S.W.2d 324, 331 (Tex. App.—Austin 1999,

---

[4] No party has raised the issue of the statute of limitations. *See, e.g.*, *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011).

5

pet. denied). This presumption is ordinarily rebutted by evidence tracing the purchase of the property to funds with a separate property character. *See id.* Many of our sister courts have adopted the rule set forth by *Lanier*,[5] and even before *Lanier*, our Court applied a similar rule. *See McCarver*, 660 S.W.2d at 597–98. The Mae Gillan heirs contend that, since we apply Texas law in determining title to Texas real estate, we should apply this community property presumption.

We disagree. Each of the cases cited above involved Texas residents who were undergoing a dissolution of marriage in Texas, either by divorce or death. In these cases, there was no evidence that the party had lived or earned money in any other state, let alone evidence that the party had exclusively lived in a common law state. For instance, in *Evans*, the court described a marital history—from purchase of a home in Humble, Texas shortly after a 1975 marriage, through a divorce in Harris County in 1998—without any mention of residence in or income from another state. *See* 14 S.W.3d at 345. Given the domicile of the parties involved in *Evans*, it was reasonable to presume that the bulk of their financial resources—and the property purchased thereby—was community property unless a contrary showing was made with tracing evidence. *See id.*

But Texas authorities show that it is unreasonable to apply the same presumption to the estate of a decedent who, as the evidence shows here, was born in a common law

---

[5] *See Granger v. Granger*, 236 S.W.3d 852, 857 (Tex. App.—Tyler 2007, pet. denied); *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.); *Coleman v. Winn-Coleman, Inc.*, 110 S.W.3d 104, 109 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *In re Estate of Giebelstein*, No. 09-10-00470-CV, 2011 WL 3847384, at *1 (Tex. App.—Beaumont Aug. 31, 2011, no pet.) (mem. op.).

state and resided there throughout his life, married in a common law state, acquired property while living in a common law state, and died in a common law state—and there is no evidence that the decedent ever drew income while domiciled in Texas or any other community property state. In such a situation, real property purchased in a community property state with funds earned in a common law state will be characterized as separate real estate because the out-of-state earnings are not community property. *Orr v. Pope,* 400 S.W.2d 614 (Tex. Civ. App.—Amarillo 1966, no writ); *see Huston v. Colonial Trust Co.*, 266 S.W.2d 231, 233 (Tex. Civ. App.—El Paso 1954, writ ref'd n.r.e.); *Tasher v. Foster Lumber Co.*, 205 S.W.2d 665, 672 (Tex. Civ. App.—Beaumont 1947, no writ); *Grange v. Kayser*, 80 S.W.2d 1007, 1009 (Tex. Civ. App.—El Paso 1935); *see also Lewis*, 944 S.W.2d at 631; *cf. Restatement (Second) Conflict of Laws*, § 234 cmt. (1971) ("[I]f a land in a common law state is purchased with funds that are held in community because acquired while spouses were domiciled in a community property state, the courts of the situs would usually hold that the spouses . . . have the same marital property interests in the land as they formerly held in the funds."). "Generally . . . real property purchased in a community property state such as Texas with funds earned in a common law state will be characterized as separate real estate, because the out-of-state earnings are characterized as separate property*." In re Eisner*, No. 05-44474, 2007 WL 2479654, at *6 (Bankr. E.D. Tex. Aug. 28, 2007) (mem. op.); *see* Karen Boxx, "Community Property Across State Lines: Square Pegs & Round Holes," 19 PROB. & PROP. 9 (2005). As the Texas Supreme Court held in a case dating back nearly 150 years:

> Admitting that the common law was the law of marital rights in the State of Georgia at the time this money was acquired, it vested in the husband as

his separate estate; and the purchase being made with this fund, the property remained the separate estate of the husband.

*Oliver*, 41 Tex. at 425. "The long-standing general rule is that property which is separate property in the state of the matrimonial domicile at the time of its acquisition will not be treated for probate purposes as though acquired in Texas." *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 665 (Tex. 1987) (citing *Oliver*, 41 Tex. at 425).

On this point, the W.A. Gillan heirs direct our attention to the Texas Title Examination Standards found in an appendix to the property code. TEX. PROP. CODE ANN., Title 2 App., Tex. Title Examination Standards § 14.50, State Bar of Tex. Joint Editorial Bd. (Aug. 31, 2009). Based on *Orr* and its kin, the title standards provide that title examiners should apply a presumption *in favor* of separate property if it is "shown the acquiring spouse was domiciled in a common law jurisdiction at the time of acquisition and if there is no indication that community funds or credit were used in the purchase." *Id.*; *see Tasher*, 205 S.W.2d at 672 ("As we understand the rule, the presumption is . . . that monies in the hands of a husband residing in a common law state is presumed to be his separate property. That being true, it necessarily follows that lands purchased in Texas with his separate monies would be his separate estate.").

The title standards further advise that any departure from the community property presumption based on exclusive domicile in another state "should be applied narrowly and cautiously." *See* TEX. PROP. CODE ANN., Title 2 App., Tex. Title Examination Standards § 14.50, State Bar of Tex. Joint Editorial Bd. (Aug. 31, 2009). We agree. Per the title standards, we will not depart from the community property presumption where there are "any indications" that community property funds could have been used to pay

8

for the property based on a decedent's "past residence in Texas or another community property state." *Id.*

However, this case satisfies that narrow criterion for a departure from the community property presumption: there is no indication that W.A. Gillan ever lived outside of a common law state. Instead, the W.A. Gillan heirs' undisputed proof shows that W.A. exclusively resided in Nebraska at all times prior to and during the acquisition of the Texas land in question. The trial court took judicial notice of Nebraska law, including Nebraska's common law system and its bar against community property claims. *See* TEX. R. EVID. 203; NEB. REV. STAT. ANN. §§ 42-603, -619. Taken together, the undisputed evidence of W.A.'s exclusive domicile in Nebraska and the trial court's judicial notice of Nebraska law were sufficient to trigger a presumption in favor of separate property. *See Tasher*, 205 S.W.2d at 672. We therefore apply a presumption in favor of separate property based on the decedent's exclusive domicile in a common law state.[6]

However, while the W.A. Gillan heirs have introduced proof sufficient to trigger a

---

[6] The facts of this case lend further support to our conclusion. Under Texas law, a major consideration in determining the characterization of property as community or separate is the "intention of spouses as shown by the circumstances surrounding the inception of title." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.); *Scott v. Estate of Scott*, 973 S.W.2d 694, 695 (Tex. App.—El Paso 1998, no pet.); *Winkle v. Winkle*, 951 S.W.2d 80, 88 (Tex. App.—Corpus Christi 1997, pet. denied). Here, the W.A. Gillan heirs have introduced evidence of the spouses' intent as evident from the circumstances. In 1950, Nebraska had recently ended a brief experiment with a community property system—adopted in 1947, repealed in 1949. *See* Act of Apr. 20, 1949, ch. 129, 1949 NEB. LAWS 337 ("Relating to Community Property Act"). To conclude the experiment, the legislature required Nebraskans to take affirmative steps or else any community property would be conclusively presumed to be separate property; any claim of community character would be forever barred unless, within one year from April 20, 1949, the party swore an affidavit that the real estate was community property and recorded the affidavit in the local office of the register of deeds. *See* NEB. REV. STAT. ANN. § 42-619 (West, Westlaw through 2016 2nd R.S.). Here, W.A. and Mae Gillan could have signaled their intent to have the minerals be considered community property by recording the affidavit prescribed by section 42-619. *See id.* Instead, the W.A. Gillan heirs have introduced some evidence showing that W.A. and Mae filed no such affidavit. *See* TEX. R. EVID. 803(10). Thus, we find further support for applying a presumption in favor of separate property on the facts of this case—specifically, the evidence that the spouses did not intend the mineral estate to be community property. *See Boyd*, 131 S.W.3d at 612; *Winkle*, 951 S.W.2d at 88.

separate property presumption, this does not end our discussion. To be entitled to summary judgment, the W.A. Gillan heirs would be required to show that there is no genuine issue of material fact as to the separate character of the property, introducing evidence that conclusively traced the mineral interest to separate funds. *See Cantey Hanger*, 467 S.W.3d at 481; *see, e.g., Walton v. Johnson*, 879 S.W.2d 942, 946 (Tex. App.—Tyler 1994, writ denied) (upholding denial of summary judgment on grounds that moderate tracing evidence did not show separate character as a matter of law). The W.A. Gillan heirs have not done so. As such, the Mae Gillan heirs may seek to rebut the presumption with tracing evidence of their own, just as Texas's ordinary community property presumption may be rebutted. *See Granger v. Granger*, 236 S.W.3d 852, 857 (Tex. App.—Tyler 2007, pet. denied); *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.).

We conclude that the W.A. Gillan heirs failed to carry their summary judgment burden to demonstrate that there is no genuine issue of material fact as to the source of funds used to pay for the property in question. *See Cantey Hanger*, 467 S.W.3d at 481. As such, we conclude that the trial court erred in granting summary judgment. *See id.*

We sustain the Mae Gillan heirs' sole issue.

## IV. CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
2nd day of June, 2016.

10